**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **HEAR-WEAR TECHNOLOGIES, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 07-CV-0212-CVE-SAJ |
| | ) |
| **OTICON, INC., et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**OPINION AND ORDER**

Now before the Court is Plaintiff's Motion to Dismiss Defendant Oticon, Inc.'s Amended Antitrust Counterclaims and Brief in Support Thereof (Dkt. # 97). Plaintiff Hear-Wear Technologies, LLC ("Hear-Wear") moves to dismiss defendant Oticon, Inc.'s ("Oticon") second and third amended counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). Hear-Wear argues that Oticon's claims are not supported by plausible factual allegations. For the reasons set forth below, the Court finds that Hear-Wear's motion should be **denied**.

**I.**

This civil action arises from the alleged infringement of four of Hear-Wear's hearing aid patents ("Patents"). Dkt. # 2, at 5-6. Hear-Wear claims that Oticon and its co-defendants, who are manufacturers of a variety of hearing aid products, willfully and deliberately infringed the Patents. Id. at 6. As a result of such infringement, Hear-Wear filed suit on April 6, 2007, seeking declaratory and injunctive relief, compensatory and "enhanced" damages, and attorneys' fees and costs. Dkt. # 2, at 7. Oticon and its co-defendants aver that their hearing aid products do not infringe the

Patents and that the Patents are invalid and unenforceable. Dkt. # 51, at 10-11; Dkt. # 64, at 6; Dkt. # 88, at 12; Dkt. # 113, at 6.

On October 1, 2007, Oticon filed its amended answer and counterclaims. See Dkt. # 88. Only the second and third amended counterclaims, pled in the alternative, are relevant to the inquiry here. In the second amended counterclaim, Oticon alleges that Hear-Wear is attempting to monopolize the relevant market in violation of the Sherman Antitrust Act, 15 U.S.C. § 2. Id. at 50. In the third amended counterclaim, Oticon alleges that Hear-Wear is attempting to monopolize the relevant market in violation of the Oklahoma Antitrust Reform Act, OKLA. STAT. tit. 79, §§ 201-212. Id. at 92. Oticon defines the relevant geographic market as the United States for its federal claim and as the State of Oklahoma for its state claim. Id. at 50, 92. According to Oticon, Hear-Wear is attempting to monopolize these markets: (1) by wrongfully attempting to enforce two of the Patents, which Oticon claims were obtained by fraud on the United States Patent and Trademark Office ("PTO"), id. at 56, 70, 93, and (2) by engaging in this sham litigation, id. at 88, 90, 93. Oticon's remaining allegations are the same for both amended counterclaims.

Oticon defines the relevant product market as "the market for hearing aids combining behind-the-ear [BTE] components with receiver-in-the-ear [RITE] components . . . commonly referred to . . . as 'BTE/RITE' hearing aid types." Id. at 50, 92. The relevant product market includes "all such hearing aids sold with electronic receiver . . . intended for 'shallow' or 'deep' insertion, and includes the market for BTE/RITE hearing aids with both an 'open' and 'closed' fit solution in combination with either a 'deep' or 'shallow' insertion." Id. at 51, 93. Oticon claims that the substitutes for Hear-Wear's products in the relevant product market include "the Oticon Delta and Epoq, the Phonak microPower, the Interton Shape (also a GN ReSound product) and the

Vivatone Entré, including various models of those product lines, which are reasonable alternatives and includable in the market." Id. at 51, 94. As for cross-elasticity of demand, Oticon states that "[t]hese products are reasonably interchangeable from an antitrust standpoint within the relevant market due to their similar utility, efficiency, reliability, responsiveness, continuity, and user preference for aesthetics, comfort, and performance attributes, and consumers treat them as acceptable substitutes." Id. at 51, 94. Oticon further states that no other close or effective substitutes exist. Id. at 51, 94.

The only alleged competitors in the relevant product and geographic markets are Hear-Wear, Oticon, and four co-defendants who, all combined, purportedly constitute about 99% of sales in these markets. Id. at 52, 95. Oticon alleges that high barriers, such as large capital requirements and significantly prolonged product-development periods, preclude entry of new competitors into the BTE/RITE hearing aid industry. Id. at 52, 95. Oticon claims that if Hear-Wear is successful in this suit, "there is a realistic and dangerous probability that Hear-Wear will achieve a monopoly of essentially 100% of the BTE/RITE market in the United States." Id. at 52, 95. Allegedly, Hear-Wear then will be able to "arbitrarily raise prices and/or reduce production of BTE/RITE hearing aids," forcing market consumers with no other alternatives "to pay the price demands of Hear-Wear." Id. at 52-53, 95.

Oticon claims that Hear-Wear's specific intent to violate "United States anti-trust laws" is demonstrated by Hear-Wear's fraud on the PTO and initiation of this allegedly sham lawsuit. Id. at 53, 95-96. These actions allegedly "have had an anti-competitive effect and have intentionally caused injury to competition beyond its impact on Oticon." Id. at 54, 96. Oticon and its co-

3

defendants allegedly have suffered direct and substantial injuries as an immediate result of Hear-Wear's antitrust violations. Id. at 55, 97.

Hear-Wear moves to dismiss Oticon's second and third amended counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). Hear-Wear avers that these amended counterclaims contain no factual allegations whatsoever to support Oticon's geographic and product market definitions. Dkt. # 97, at 8-9. Thus, according to Hear-Wear, Oticon's attempted monopolization counterclaims should be dismissed. Id. at 9.

**II.**

A motion to dismiss is properly granted when a complaint or counterclaim provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007). In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. The factual allegations within the claim "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint [counterclaim]." Id. at 1969. For purposes of making the dismissal determination, a court must accept all the well-pleaded allegations of the claim as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. Id. at 1965; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted). "[C]onclusory allegations without supporting factual

averments are insufficient to state a claim upon which relief can be based." Hall v. Bellman, 935 F.2d 1106, 1109-10 (10th Cir. 1991). In sum, the claimant must allege facts sufficient to state a claim to relief that is plausible on its face. Twombly, 127 S. Ct. at 1974.

### III.

The Sherman Antitrust Act and the Oklahoma Antitrust Reform Act prohibit attempted monopolization.[1] 15 U.S.C. § 2; OKLA. STAT. tit. 79, § 203(B). Both Acts require a claimant to satisfy the same four elements. See Green Country Food Mkt., Inc. v. Bottling Group, LLC, 371 F.3d 1275, 1281 (10th Cir. 2004) (construing a § 203(B) claim in accordance with federal antitrust law). A claim of attempted monopolization must allege: (1) relevant market, comprised of geographic market and product market components, (2) dangerous probability of successful monopolization in the relevant market, (3) specific intent to monopolize the relevant market, and (4) conduct in furtherance of the monopolization attempt. United States v. AMR Corp., 335 F.3d 1109, 1113 (10th Cir. 2003); Full Draw Prods. v. Easton Sports, Inc., 182 F.3d 745, 756 (10th Cir. 1999); TV Commc'ns Network, Inc. v. Turner Network Television, Inc., 964 F.2d 1022, 1025 (10th Cir. 1992); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 893 (10th Cir. 1991). If the claim does not adequately allege these elements, it cannot survive dismissal.

Hear-Wear argues that Oticon's amended counterclaims "fail to allege any facts, much less concrete facts, which show that Oticon's attempted monopolization claims are plausible." Dkt. # 97, at 11. According to Hear-Wear, Oticon's federal and state antitrust claims are not plausible

---

[1] Section 2 of the Sherman Antitrust Act prohibits "attempt[s] to monopolize . . . any part of the trade or commerce among the several States . . ." Section 203(B) of the Oklahoma Antitrust Reform Act prohibits "attempt[s] to monopolize . . . any part of trade or commerce in a relevant market within this state."

because the first element, relevant market, is formulaically recited and supported with bare conclusory allegations. Id. at 11-12. Hear-Wear avers that Oticon does not plausibly support the geographic and product market components, and that the attempted monopolization claims as a whole cannot stand absent properly supported definitions. Dkt. # 112, at 2. Hear-Wear argues that under Twombly and other precedent, Oticon's second and third amended counterclaims should be dismissed. Dkt. # 97, at 11-12.

In Twombly, the United States Supreme Court addressed the proper pleading standard for an antitrust conspiracy claim alleging parallel conduct in support of an actual agreement — a key element. 127 S. Ct. at 1963. The Court began by noting that conspiracy claims under § 1 of the Sherman Act must contain "enough factual matter (taken as true) to suggest" the existence of essential conspiracy elements. Id. at 1965. The Court found that the plaintiffs' conspiracy claim rested entirely on descriptions of parallel conduct — not on any independent allegations of an actual illicit agreement among the defendants. Id. at 1970. The Court noted that "the pleadings mentioned no specific time, place, or person involved in the alleged conspiracies." Id. at 1971 n.10. Further, the complaint furnished "no clue as to which of the four [defendants] (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place. . . . [Thus,] a defendant seeking to respond to plaintiffs' conclusory allegations in the § 1 context would have little idea where to begin." Id. While the conspiracy claim did not have to meet a heightened fact pleading of specifics, it did have to include "enough facts to state a claim to relief that [wa]s plausible on its face." Id. at 1974. In conclusion, the Court found that the plaintiffs failed to "nudge[] their claims across the line from conceivable to plausible," and, therefore, the dismissal of the complaint was proper. Id.

The Tenth Circuit has yet to address Twombly in the antitrust context. Nevertheless, several pre-Twombly decisions are applicable to this Court's inquiry.[2] In Tal v. Hogan, 453 F.3d 1244, 1261 (10th Cir. 2006), the court found that bald allegations of "bid-rigging," a key element to the antitrust conspiracy claim, were insufficient under Rule 12(b)(6). Even if the court assumed the factual allegations to be true, the conduct alleged did not "constitute collusion among competitors to fix a price bid," and was "no better than claiming that the defendants violated 'the antitrust laws' in the abstract." Id. The court concluded, therefore, that "[a]bsent specific factual allegations that support a claim . . . [the] use of antitrust buzz-words and parroting of general antitrust theories is insufficient to support a Sherman Act violation." Id. On the other hand, the court in Full Draw Productions, 182 F.3d at 755, found that the plaintiff adequately pled the requisite elements of its Sherman Act claims notwithstanding the complaint's lack of clarity and thoroughness. Id. The court noted that "[i]n the end," the adequacy of the complaint's factual allegations hinged on whether the defendants had notice of the plaintiff's claims. Id. at 755-76 (quoting Monument Builders of Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan., 891 F.2d 1473, 1481 (10th Cir. 1989)). The plaintiff in Full Draw Productions sufficiently pled the elements of attempted monopolization under Sherman Act § 2 because: (1) the plaintiff's definition of the relevant market was supported by factual allegations detailing the distinct nature of the relevant product market, the relevant product's difference from other products, and the relevant product's consumer base; (2) the plaintiff's claim of dangerous probability of success was supported by factual allegations detailing the defendants' market share, the number and strength of other competitors, market trends, and entry

---

[2] This Court declines Hear-Wear's invitation to explore non-binding case law from other jurisdictions, particularly in light of the adequacy of Tenth Circuit precedent on this issue.

7

barriers; (3) the plaintiff's allegation that defendants specifically intended to monopolize the relevant market was stated; and (4) the plaintiff's claim that defendants behaved in furtherance of their attempted monopolization was supported by the defendants' alleged boycotting activities. Id. at 756. The court concluded that "[t]ogether, these allegations sufficiently plead[ed] the requisite elements of attempted monopolization." Id.

Other Tenth Circuit decisions have focused more on the plaintiffs' pleading of specific elements. In TV Communications Network, 964 F.2d at 1025-26, the court held that the plaintiff must assert factual allegations sufficient to establish the existence of a relevant market and the power within that market. The court found that because the plaintiff defined the relevant product market as the defendant's product itself, the complaint was insufficient as a matter of law. Id. at 1026. A § 2 claim "cannot lie against [defendant] for the monopolization of its own product." Id. Thus, the court concluded that the plaintiff could prove no set of facts which would show that the defendant had a dangerous probability of successfully monopolizing the defined relevant market. The defendant was incapable of attempting to monopolize its own product. Id.

In Bottling Group, 371 F.3d at 1283, the Tenth Circuit found that the plaintiffs' attempted monopolization claim failed as a matter of law because the alleged relevant product market was under-inclusive. A properly defined product market consists of "products that have reasonable interchangeability for the purposes for which interchangeability of products is measured by, and is substantially synonymous with, cross-elasticity."[3] Id. at 1282 (internal quotation marks and citation omitted). A proper product market definition should also contain factors such as "the product's

---

[3] Cross-elasticity means that the demand for one product is inversely related to the demand for another product. Id.

peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, and sensitivity to price changes and specialized vendors." Id. at 1282-83. The court found that the plaintiffs could not define the relevant product market as consisting solely of Pepsi products because "[b]rand loyalty of consumers to particular soft drinks [wa]s an insufficient basis for concluding that Pepsi constitute[d] a relevant product market." Id. at 1283. In sum, the plaintiffs failed to show why Pepsi products were not reasonably interchangeable with Coke products. Id.

Although the court's decision in Bacchus Industries, 939 F.2d at 893, did not involve Rule 12(b)(6), the court's discussion of the relevant market element is nonetheless informative. The court began by noting that "[w]ithout a definition of relevant market for the product involved, there is no way to measure the defendant's ability to lessen or destroy competition." Id. at 893. The court reasoned that the plaintiff had adequately defined the relevant product market because the market included only reasonably interchangeable products. Id. The court also approved of the plaintiff's definition of relevant geographic market, which was limited to the area of effective competition. Id. Given these proper definitions, the court found that the plaintiff satisfied the first element of its § 2 claim. Id.

Here, the Court finds that Hear-Wear's motion should be denied. Twombly and the Tenth Circuit decisions do not mandate dismissal of Oticon's second and third amended counterclaims. Twombly involved a failure to allege conduct establishing an essential element of a conspiracy claim. 127 S. Ct. at 1965. The Court noted that the pleadings did not contain important details such as the specific time, place, or persons involved in the alleged conspiracies. Id. at 1971 n.10. The plaintiffs' conclusory allegations gave the defendants "little idea where to begin." Id. Hear-Wear, on the other hand, cannot claim that it faces a similar situation. Oticon very plainly defines the

9

relevant geographic markets as the United States (second amended counterclaim) and the State of Oklahoma (third amended counterclaim).

As to the second amended counterclaim, the Court knows of no reason, at this juncture, why the alleged geographic market of the United States, even if doubtful in fact, cannot constitute the area of effective competition. Bacchus Indus., 939 F.2d at 893. The Court declines Hear-Wear's invitation to take judicial notice of disputed facts to resolve the relevant geographic market inquiry. Compare Dkt. # 112, at 9-10 with Dkt. # 106, at 10-13. The fact that Oticon's website states, under the heading "Going global," that "[i]n the 1960s and 1970s, Oticon experienced significant growth" and opened facilities in numerous countries sheds little light on the issue of whether the area of effective competition for BTE/RITE hearing aids is the United States. See Oticon — Through the years,http://www.oticon.com/com/aboutoticon/corporateculture/oticonthroughtheyears/index.htm (last visited Mar. 4, 2008). The Court also finds that the locations in which Oticon sells BTE/RITE hearing aids is obviously not a matter of common knowledge. The Court has no basis to conclude that Hear-Wear is incapable of attempting to monopolize the United States. Cf. TV Communications Network, 964 F.2d at 1026 (concluding that, logically, the defendant could not attempt to monopolize its own product market). In the end, the facial adequacy of Oticon's factual allegations hinges on whether Hear-Wear has notice — not on whether Oticon's proposed definition will ultimately prevail. Full Draw Prods., 182 F.3d at 755-56.

As to the third amended counterclaim and Oticon's allegation that the alleged geographic market for its state claim is the State of Oklahoma, Dkt. # 88, at 92, the Court is perplexed by Oticon's failure to address this geographic market anywhere in its response. Oticon merely states that "[i]n its Amended Antitrust Counterclaims relevant to the instant Motion to Dismiss, Oticon has

10

alleged that the relevant geographic market is the <u>United States</u> . . . ." Dkt. # 106, at 6 (emphasis added). But this is incorrect. Oticon proffers two relevant geographic markets in its amended antitrust counterclaims. The Court cannot explain this inconsistency between Oticon's response to Hear-Wear's motion and the counterclaims. The Court notes that both market definitions, as they stand, are facially plausible because they are pled in the alternative.[4] <u>See</u> Fed. R. Civ. P. 8(d) ("A party may set out two or more statements of a claim . . . alternatively . . . either in a single count . . . or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). Nevertheless, because Oticon requests leave to amend in the last paragraph of its response, <u>see</u> Dkt. # 106, at 21, and because the Court cannot resolve this discrepancy, the Court will grant Oticon leave to amend <u>only</u> ¶ 241 of the third amended counterclaim if it so elects. Oticon may not amend any other portion of its pleading.

Aside from this discrepancy, both definitions of the relevant market are supported by the same factual allegations detailing the distinct nature of the relevant product market and the relevant product's difference from other products.[5] <u>Full Draw Prods.</u>, 182 F.3d at 756. Oticon defines the relevant product market as "the market for hearing aids combining behind-the-ear [BTE] components with receiver-in-the-ear [RITE] components . . . commonly referred to . . . as 'BTE/RITE' hearing aid types." Dkt. # 88, at 50, 92-93. The relevant product market includes "all

---

[4]  The parties should not extrapolate from this finding. The Court is merely ruling on whether Oticon's alternatively pled, relevant geographic market definitions are facially plausible. The Court is not finding that either claim is substantively viable.

[5]  A finding that both claims contain sufficient factual allegations does not negate the general principle that "a patent does not necessarily confer market power upon the patentee." <u>Ill. Tool Works Inc. v. Indep. Ink, Inc.</u>, 547 U.S. 28, 45 (2006). Whether Hear-Wear has market power is not at issue here.

such hearing aids sold with electronic receiver . . . intended for 'shallow' or 'deep' insertion, and includes the market for BTE/RITE hearing aids with both an 'open' and 'closed' fit solution in combination with either a 'deep' or 'shallow' insertion." Id. at 51, 93. Oticon claims that the substitutes for Hear-Wear's products in the relevant product market include "the Oticon Delta and Epoq, the Phonak microPower, the Interton Shape (also a GN ReSound product) and the Vivatone Entré, including various models of those product lines, which are reasonable alternatives and includable in the market." Id. at 51, 94. As for cross-elasticity of demand, Oticon states that "[t]hese products are reasonably interchangeable from an antitrust standpoint within the relevant market due to their similar utility, efficiency, reliability, responsiveness, continuity, and user preference for aesthetics, comfort, and performance attributes, and consumers treat them as acceptable substitutes." Id. at 51, 94. Oticon states that no other close or effective substitutes exist. Id. at 51, 94.

Oticon alleges that Hear-Wear, Oticon, and four co-defendants are the only competitors in the in the relevant product and geographic markets, and that these competitors combined purportedly constitute about 99% of sales in these markets. Id. at 52, 94-95. Oticon alleges that high barriers, such as large capital expenditures and significantly prolonged product-development periods, preclude entry of new competitors into the BTE/RITE hearing aid industry. Id. at 52, 95. Oticon claims that if Hear-Wear is successful in this suit, "there is a realistic and dangerous probability that Hear-Wear will achieve a monopoly of essentially 100% of the BTE/RITE market in the United States." Id. at 52, 96. Allegedly, Hear-Wear then will be able to "arbitrarily raise prices and/or reduce production of BTE/RITE hearing aids," forcing market consumers with no other alternatives "to pay the price demands of Hear-Wear." Id. at 52-53; 95. While Oticon's amended counterclaims

do not explicitly identify the relevant product's consumer base or explicitly list the differences between BTE/RITE hearing aids and other devices, a lack of clarity and thoroughness is not necessarily determinative. Full Draw Prods., 182 F.3d at 755-56. Inferences about the product market's consumer base and distinguishing characteristics can be drawn from Oticon's plainly stated description of the BTE/RITE feature. See Dkt. # 88, at 51, 93 ("[A]ll such hearing aids sold with electronic receiver . . . intended for 'shallow' or 'deep' insertion, and . . . with both an 'open' and 'closed' fit solution with either a 'deep' or 'shallow' insertion.").

Unlike the complaint in Tal v. Hogan, 453 F.3d 1244, 1261 (10th Cir. 2006), Oticon's claims are not conclusory. The court in Tal found that even if it assumed the factual allegations to be true, the conduct alleged still did not support the existence of the element of collusion among competitors. Id. Thus, the court reasoned that antitrust buzz-words and parroting of general antitrust theories could not transform a lacking claim. Id. Specific factual allegations were necessary. Id. Here, however, Oticon's factual allegations, if true, would support the existence of a relevant market. Oticon's definitions of relevant markets address important factors such as cross-elasticity of demand and interchangeability of products, peculiar characteristics, and unique barriers to entry. Bottling Group, 371 F.3d at 1282-83; Bacchus Indus., 939 F.2d at 893. The Court concludes, therefore, that Oticon's second and third amended counterclaims contain enough facts to state facially plausible claims.[6]

---

[6]   This conclusion moots Hear-Wear's remaining arguments that the attempted monopolization claim as a whole cannot stand absent proper market definitions. See Dkt. # 97, at 18.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Dismiss Defendant Oticon, Inc.'s Amended Antitrust Counterclaims and Brief in Support Thereof (Dkt. # 97) is hereby **denied**. If it so elects, Oticon may file a revised ¶ 241 of its third amended counterclaim no later than **March 12, 2008.**

**DATED** this 6th day of March, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT