# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HEAR-WEAR TECHNOLOGIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 07-CV-0212-CVE-SAJ |
| | ) |
| PHONAK, LLC, et al., | ) |
| | ) |
| Defendants, | ) |
| | ) |
| PHONAK, LLC, | ) |
| | ) |
| Counterclaim Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| HEAR-WEAR TECHNOLOGIES, LLC, | ) |
| JAMES F. FEELEY, MICHAEL J. FEELEY, | ) |
| SEBOTEK HEARING SYSTEMS, | ) |
| CLEARTONE HEARING AID | ) |
| LABORATORIES, INC., and J&M SOUND | ) |
| TECHNOLOGIES, LLC, | ) |
| | ) |
| Counterclaim Defendants. | ) |

## OPINION AND ORDER

Now before the Court are Plaintiff's Motion to Dismiss Phonak, LLC's Amended Second Counterclaims under the Oklahoma Antitrust Reform Act and Counterclaim Defendants Joined in Antitrust Claim (Dkt. # 129) and Later-Added Counterclaim Defendants' Motion to Dismiss Phonak, LLC's Amended Second Counterclaims under the Oklahoma Antitrust Reform Act (Dkt. # 136). Counterclaim defendants Hear-Wear Technologies, LLC ("Hear-Wear"), James F. Feeley and Michael J. Feeley (collectively "the Feeleys"), SeboTek Hearing Systems ("SeboTek"), Cleartone Hearing Aid Laboratories, Inc. ("Cleartone"), and J&M Sound Technologies LLC ("J&M Sound")

move to dismiss counterclaim plaintiff Phonak, LLC's ("Phonak") second amended counterclaim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the Court finds that the motions should be **denied**.

I.

The instant civil action arises from the alleged infringement of four of Hear-Wear's hearing aid patents ("Patents"). Dkt. # 2, at 5-6. Hear-Wear claims that Phonak and its co-defendants, who are manufacturers of a variety of hearing aid products, willfully and deliberately infringed the Patents. Id. at 6. As a result of such alleged infringement, Hear-Wear filed suit on April 6, 2007, seeking declaratory and injunctive relief, compensatory and "enhanced" damages, and attorneys' fees and costs. Dkt. # 2, at 7. Phonak and its co-defendants aver that their hearing aid products do not infringe the Patents and that the Patents are invalid and unenforceable. Dkt. # 51, at 10-11; Dkt. # 64, at 6; Dkt. # 88, at 12; Dkt. # 113, at 6.

On December 19, 2007, Phonak filed its amended answer and counterclaims. See Dkt. # 113; Dkt. # 114. Only the second amended counterclaim is at issue here. In the second amended counterclaim, Phonak alleges that counterclaim defendants have engaged in "collective activity" in restraint of trade in violation of the Oklahoma Antitrust Reform Act, OKLA. STAT. tit. 79, § 203(A). Dkt. # 114, at 14, 17. Phonak alleges that all counterclaim defendants are interrelated. See id. at 15-17. According to Phonak, Hear-Wear is a shell corporation created by the Feeleys "for the purpose of sheltering the Feeleys from liability for their actions, for which they are personally liable." Id. at 15. The Feeleys are executive officers and/or owners of SeboTek and Cleartone. Id. at 15-16. Likewise, James F. Feeley is the registered agent of SeboTek, Cleartone, and J&M Sound. Id. at 15-16. J&M Sound is the parent entity of Hear-Wear. Id. at 16. Based on a declaration to the

Patent and Trademark Office, Phonak alleges that Hear-Wear and Cleartone are affiliated corporate entities. Id. Phonak further alleges that "Cleartone developed, manufactures and sells hearing aids under the Sebo Tek [sic] name . . . and is referred to as a sister company of Sebo Tek [sic]." Id. Phonak claims that "counterclaim defendants, under the 'effective control' of the Feeleys, engaged in collective activity in restraint of trade, to block the entry of new products into the market by having shell Hear-Wear assert an objectively baseless lawsuit . . . to block the[] launch of improved hearing aid products." Id. at 17. According to Phonak, this collective activity "is part of an ongoing pattern that is harming competition in the hearing aid line of commerce." Id. at 27. Phonak proffers several pages of "evidence" in support of its "collective activity" assertion. See id. at 25-27. According to Phonak, counterclaim defendants' activity in restraint of trade consists of: (1) several objectively baseless lawsuits, id. at 27-28, and (2) the establishment of a sham basis for asserting unreasonably high royalty damages, id. at 26.

Phonak states that the hearing aid line of commerce in the United States is "characterized by healthy competition amongst a number of competitors, including defendants in this case, and by the introduction of improved products under patent licenses made available to the industry through HIMPP (Hearing Instrument Manufacturers Patent Partnership)." Id. at 17. According to Phonak, HIMPP's overriding objective is to avoid "patent infringement disputes while encouraging patent licensing, innovation and healthy competition in the hearing aid line of commerce." Id. Phonak claims that counterclaim defendants have not become members of HIMPP or availed themselves of any licenses for patents covering hearing aid improvements. Id.

As to the alleged harm to Phonak and other competition, Phonak claims that the actions of counterclaim defendants "constitute activity in restraint of trade with the intent of stifling

3

competition and blocking the introduction of innovations in the hearing aid line of commerce." Id. at 29. These actions allegedly have had an anticompetitive effect and intentionally caused harm to Phonak, "which has stopped or limited importation of its accused products into the United States." Id. Based on information and belief, Phonak alleges that counterclaim defendants' actions have "had comparable effects on the business activity of the other named defendants and competitors in the hearing aid line of commerce." Id. Phonak also has been allegedly "harmed by the expense and business uncertainty of defending against this objectively baseless lawsuit." Id. According to Phonak, "there is currently and likely [will be] a future adverse effect on market competition and the ability of consumers to secure new and improved products in the hearing aid marketplace and there is a direct connection between the actions of Hear-Wear, the Feeleys, Sebo Tek [sic], J&M Sound, and Cleartone, and the injury to their competitors." Id. Phonak allegedly has suffered direct and substantial harm resulting from counterclaim defendants' illicit conduct, "including but not limited to lost sales and profits, attorney fees and legal costs, pre-judgment interest, lost market share, reduction in business value, lost business reputation or goodwill, as well as other associated costs." Id. at 29-30. Counterclaim defendants move to dismiss Phonak's second amended counterclaim pursuant to Fed. R. Civ. P. 12(b)(6).

**II.**

A motion to dismiss is properly granted when a complaint or counterclaim provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007). In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. The factual allegations within the claim "must be enough to raise a

right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the [pleading]." Id. at 1969. For purposes of making the dismissal determination, a court must accept all the well-pleaded allegations of the claim as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. Id. at 1965; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellman, 935 F.2d 1106, 1109-10 (10th Cir. 1991). In sum, the claimant must allege facts sufficient to state a claim for relief that is plausible on its face. Twombly, 127 S. Ct. at 1974.

### III.

Counterclaim defendants move to dismiss the second amended counterclaim on three grounds. First, counterclaim defendants argue that Phonak's allegations of "collective activity" do not qualify as an "act," or a collection of individual "acts" by each counterclaim defendant, in restraint of trade under OKLA. STAT. tit. 79, § 203(A). Dkt. # 129, at 6, 12; Dkt. # 136, at 1-2. Second, counterclaim defendants argue that, even if collective activity were to qualify as a unilateral act in restraint of trade, Phonak still fails to allege that the purported restraint is unreasonable. Dkt. # 129, at 14; Dkt. # 136, at 1-2. Third, counterclaim defendants argue that Phonak fails to allege antitrust injury. Dkt. # 129, at 16; Dkt. # 136, at 1-2. The Court addresses each of these arguments in turn.

5

Collective Activity as a Unilateral Act

Section 203(A) of Title 79 of the Oklahoma Statutes provides that "[e]very act, agreement, contract, or combination in the form of a trust, or otherwise, or conspiracy in restraint of trade or commerce within this state is hereby declared to be against public policy and illegal." In a previous Opinion and Order (Dkt. # 111), the Court found that counterclaim defendants qualify as a single entity for purposes of § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.[1] See Hear-Wear Techs., LLC v. Oticon, Inc., No. 07-CV-0212-CVE-SAJ, 2007 WL 4379714, at *4-5 (N.D. Okla. Dec. 12, 2007). Therefore, under Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752 (1984), and its progeny, Phonak cannot state a federal claim for antitrust conspiracy against related entities and their officers. See Hear-Wear Techs., 2007 WL 4379714, at *3-5. Copperweld and its progeny also govern interpretation of all of § 203(A) except that portion of the Oklahoma Act that prohibits an "act" in restraint of trade, which the Sherman Act does not cover. See OKLA. STAT. tit. 79, § 212 ("The provisions of this act shall be interpreted in a manner consistent with Federal Antitrust Law 15 U.S.C., Section 1 et seq. and the case law applicable thereto." (footnote omitted)); Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1550 (10th Cir.), cert. denied, 519 U.S. 928 (1996) ("Federal rulings premised on the plain language of § 1 . . . are inapposite to the significance of language in the Oklahoma statute that is absent from the federal legislation." (emphasis added)); see also Fine Airport Parking, Inc. v. City of Tulsa, 71 P.3d 5, 10 (Okla. 2003) ("This Court has followed the interpretation of the federal antitrust statute in deciding what is an unreasonable restraint of trade under Oklahoma antitrust statutes."); Beville v. Curry, 39 P.3d 754, 759 (Okla.

---

[1]    Section 1 of the Sherman Antitrust Act states that "[e]very contract, combination . . . or conspiracy, in restraint of trade . . . is declared to be illegal."  15 U.S.C. § 1.

6

2001) ("The provisions of this state's antitrust statutes are similar to federal legislation, and interpretation of federal antitrust legislation provides assistance in interpreting the provisions of the Oklahoma statutes."); Teleco, Inc. v. Ford Indus., Inc., 587 P.2d 1360, 1362 (Okla. 1978) ("Interpretation of Section 1 of the Sherman Antitrust Act is particularly useful in interpreting Section [203(A)] of Title 79, as those sections are virtually identical." (citation omitted)).  Thus, because counterclaim defendants are incapable of forming a combination or conspiracy in restraint of trade under federal law, they likewise are incapable of forming a combination or conspiracy in restraint of trade under Oklahoma law.

The Oklahoma Supreme Court has not directly spoken, however, on the issue of whether the "collective activity" of a § 1 single entity constitutes an "act" in restraint of trade under § 203(A). In Fine Airport Parking, 71 P.3d at 10, the Oklahoma Supreme Court merely characterized § 203(A) as a "general prohibition against restraints of trade."  While the court noted that "[t]he state antitrust statutes expressly prohibit every <u>unilateral</u> 'act' of anti-competitive conduct[,]"[2] the court did not

---

[2] The court included this note as a follow-up to its finding that "the Act specifically makes it unlawful for a person 1) to monopolize or attempt to monopolize . . . in § 203(B), or 2) to unreasonably refuse access . . . in § 203(C), or 3) to discriminate in the price of a commodity . . . in § 204."  Id. at 10.

7

define which acts qualify as "unilateral."[3]  Id. at 10 n.5 (emphasis in original).  Assuming the Oklahoma Supreme Court would apply the Copperweld doctrine to the inquiry here, counterclaim defendants would constitute a single entity capable of unilateral acts.  See Hear-Wear Techs., 2007 WL 4379714, at *4-5.  To hold otherwise would create a loophole where the Oklahoma Legislature intended to eliminate one.  Absurdly, collective acts of related entities would escape federal antitrust scrutiny under Copperweld and escape Oklahoma antitrust scrutiny of unilateral acts.  This loophole would undermine the plain and sweeping language of § 203(A).  As noted by Phonak, § 203(A) "prohibits EVERY ACT in restraint of trade."  Dkt. # 148, at 12 (emphasis in original).  Thus, for

---

[3]  The Tenth Circuit also has not addressed this issue.  In Harolds Stores, the Tenth Circuit was presented with the question of whether § 203(A) prohibits unilateral acts in restraint of trade. The court answered in the affirmative and found that it "must presume that the Oklahoma Legislature intended the word 'act' in Okla. Stat. tit. 79, § [203(A)] to carry its ordinary meaning of something done voluntarily by a person."  82 F.3d at 1549.  The court supported this finding by citing, among other things, OKLA. STAT. tit. 25, § 1.  Section 1 provides that "[w]ords used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears . . . ."  Id.  This Court finds that Harolds Stores does not preclude a claim against each of the counterclaim defendants for their collective activity in restraint of trade under § 203(A) simply because the court used the word "person" (in the singular rather than plural).  Harolds Stores did not involve allegations of collective activity. A finding that a single entity may collectively "act" in restraint of trade also does not contravene the ordinary understanding of the plain language of § 203(A).  Further, Champagne Metals v. Ken-Mac Metals, Inc., 458 F.3d 1073 (10th Cir. 2006), is distinguishable.  Unlike this case, Champagne Metals did not involve a "single entity" under Copperweld.  The established group of competitors had the potential capability to conspire or combine in restraint of trade in violation of § 1 of the Sherman Act and § 203(A).  Id. at 1091.

purposes of Rule 12(b)(6), the Court finds that Phonak's allegations of collective activity adequately state a unilateral act in restraint of trade under § 203(A).[4]

Unreasonable Restraint

Section 203(A) prohibits only those acts that <u>unreasonably</u> restrain trade or commerce, however. Fine Airport Parking, 71 P.3d at 10. The Oklahoma Supreme Court has held that "[r]estraint of trade that has a pernicious effect on competition is conclusively presumed unreasonable and a per se violation of the antitrust statutes." Id. If a restraint does not fall within the <u>per se</u> category, it is "tested by a rule of reason to determine if the activity unduly restrict[s] competition and unreasonably prejudice[s] public interest." Id. That court has held that "[t]he fundamental test of the reasonableness of an action, which, by its nature, restrains trade, is its effect on the public." Id.

Neither party disputes that the rule of reason analysis applies. "Rule of reason analysis first asks whether the offending competitor . . . possesses market power in the relevant market where the alleged anticompetitive activity occurs." SCFC ILC, Inc. v. Visa USA, Inc., 36 F.3d 958, 965 (10th

---

[4] This Court has already ruled that counterclaim defendants should be treated as a "single entity" for § 1 purposes. As counterclaim defendants note, Phonak's allegations regarding the interrelationship of counterclaim defendants remain unchanged. Dkt. # 129, at 10 n.4. In the second amended counterclaim, Phonak alleges that counterclaim defendants are either (1) officers or owners of the same corporations, (2) parent and subsidiary corporations, or (3) sister corporations. Id. Phonak further alleges that all of the counterclaim defendants engaged in the collective activity and describes the specific activity. Mitchael v. Intracorp, Inc., 179 F.3d 847, 857 (10th Cir. 1999), cited by counterclaim defendants, is inapplicable. The court noted that the plaintiffs failed to present evidence of any involvement by the parent or sister corporations <u>or</u> any evidence that "Intracorp [wa]s merely the alter ego of its parent or sister corporations." Id. at 857 n.12. Here, counterclaim defendants qualify as a § 1 single entity. Thus, assuming the Oklahoma Supreme Court would extend the Copperweld doctrine to § 203(A), Phonak has adequately pled counterclaim defendants' interrelationship and unity of interest for purposes of alleging unilateral action under Oklahoma antitrust law.

Cir. 1994). If market power exists, "the court may then proceed under rule of reason analysis to assess the procompetitive justifications of the alleged anticompetitive conduct." Id. To state an unreasonable restraint of trade, a claimant must allege legitimate anticompetitive activity with supporting facts. See TV Commc'ns Network, Inc. v. Turner Network Television, Inc., 964 F.2d 1022, 1027 (10th Cir. 1992) (dismissing both per se and rule of reason Sherman Act § 1 claims for failure to allege any supporting facts).

The United States Supreme Court recently reviewed the sufficiency of alleged anticompetitive activity under Rule 12(b)(6). Twombly, 127 S. Ct. at 1963. The Court addressed the proper pleading standard for an antitrust conspiracy claim alleging parallel conduct in support of an actual agreement. Id. The Court began by noting that conspiracy claims under § 1 of the Sherman Act must contain "enough factual matter (taken as true) to suggest" the existence of essential conspiracy elements. Id. at 1965. The Court found that the plaintiffs' conspiracy claim rested entirely on descriptions of parallel conduct – not on any independent allegations of an actual illicit agreement among the defendants. Id. at 1970. The Court noted that "the pleadings mentioned no specific time, place, or person involved in the alleged conspiracies." Id. at 1971 n.10. Further, the complaint furnished "no clue as to which of the four [defendants] (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place. . . . [Thus,] a defendant seeking to respond to plaintiffs' conclusory allegations in the § 1 context would have little idea where to begin." Id. While the conspiracy claim did not have to meet a heightened fact pleading of specifics, it did have to include "enough facts to state a claim to relief that [wa]s plausible on its face." Id. at 1974. The Court noted that "some threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly

and protracted discovery phase." Id. at 1966. (internal quotation marks and citation omitted)). In conclusion, the Court found that the plaintiffs failed to "nudge[] their claims across the line from conceivable to plausible," and, therefore, the dismissal of the complaint was proper. Id. at 1974.

Counterclaim defendants argue that "Phonak has not pled facts necessary even to take the first step in determining whether the alleged restraint is unreasonable." Dkt. # 129, at 16. Counterclaim defendants contend that Phonak has not alleged market power in the relevant market as required by SCFC. Id. According to counterclaim defendants, "[a]bsent market power, a unilateral act (whether objectively 'reasonable' or not) will not have an adverse effect on competition and therefore, as a matter of law, is not an unreasonable restraint on trade in an antitrust sense (and does not result in antitrust injury)." Dkt. # 157, at 8.

Yet counterclaim defendants' argument ignores the fact that SCFC was a case involving an appeal after judgment pursuant to Fed. R. Civ. P. 50(b). 36 F.3d at 962. SCFC did not address the sufficiency of a pleading under Rule 12(b)(6). TV Communications Network, 964 F.2d at 1027, on the other hand, did address the sufficiency of a claim and required only the assertion of supporting facts to avoid Rule 12(b)(6) dismissal. While the Court agrees that a claimant must show market power to prove an unreasonable restraint of trade, the Court does not have an adequate record before it – at this early stage in the litigation – to resolve the market power inquiry. Twombly does not require a heightened fact pleading of specifics. 127 S. Ct. at 1974. Counterclaim defendants cannot say that they do not have adequate "notice" of Phonak's alleged harm to competition as required by Fed. R. Civ. P. 8. See id. at 1970-71.

The claim sufficiently alleges an "activity unduly restrict[ing] competition." Fine Airport Parking, 71 P.3d at 10. Phonak claims that "counterclaim defendants, under the 'effective control'

11

of the Feeleys, engaged in collective activity in restraint of trade, to block the entry of new products into the market by having shell Hear-Wear assert an objectively baseless lawsuit . . . to block the[] launch of improved hearing aid products." Id. at 17.  According to Phonak, this collective activity "is part of an ongoing pattern that is harming competition in the hearing aid line of commerce." Id. at 27.  Phonak proffers several pages of allegations in support of the purported "collective activity," which includes several objectively baseless lawsuits and the establishment of a sham basis for asserting unreasonably high royalty damages.  See id. at 25-27.  If accepted as true, at least some of this activity could constitute a barrier to entry which restricts competition; "[a]nd, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ." Twombly, 127 S. Ct. at 1965.

Nevertheless, counterclaim defendants argue that Phonak's claims of unreasonableness and antitrust injury are "defeated by its own allegations . . . that the alleged market 'is characterized by healthy competition amongst a number of competitors, including the defendants in this case, and by the introduction of improved products . . . .'"  Dkt. # 157, at 10 (quoting Dkt. # 114, at 17); Dkt. # 129, at 12.  While these may be apparently conflicting allegations, the Court declines to dismiss the second amended counterclaim on this ground alone.  First, the Court is unclear whether this statement describes the relevant line of commerce before or after the filing of the alleged sham litigation (which includes this case).  Second, it is not necessarily inconsistent to say that a market can be characterized as typically "healthy" and yet be harmed by sham litigation that is ongoing. Although the Court recognizes the persuasiveness of counterclaim defendants' argument, and that

this question is a very close call, discovery ultimately will reveal whether competition in the relevant line of commerce has been harmed.[5]

Antitrust Injury

For the same reasons, the Court finds that Phonak also has pled sufficient antitrust injury to state a facially plausible claim. "To establish antitrust injury, a plaintiff 'must allege a business or property injury, an antitrust injury, as defined by the Sherman Act.'" Tal v. Hogan, 453 F.3d 1244, 1257-58 (10th Cir. 2006). "An antitrust injury is an injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendant's acts unlawful." Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co., 407 F.3d 1091, 1124 (10th Cir. 2005). Section 203(A)'s primary concern is "the corruption of the competitive process, not the success or failure of a particular firm." Tal, 453 F.3d at 1258. Hence, "[t]he antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior." Elliott Indus., 407 F.3d at 1124-25 (internal quotation marks and citation omitted) (alterations in original).

---

[5] Out of an abundance of caution, the Court finds that Phonak's claim sufficiently crosses "some threshold of plausibility" and thus this "patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase." Twombly, 127 S. Ct. at 1966 (internal quotation marks and citation omitted). Further, because Phonak also asserts the affirmative defense of patent misuse, which is broader than its antitrust counterclaim, see C.R. Bard Inc. v. M3 Sys. Inc., 157 F.3d 1340, 1372 (Fed. Cir. 1998) ("Patent misuse is viewed as a broader wrong than antitrust violation because of the economic power that may be derived from the patentee's right to exclude."), discovery over the sham litigation issue will occur regardless of the Court's ruling here. In other words, because a "patent [may be] misused when its owner uses it in violation of the antitrust laws," HERBERT F. SCHWARTZ, PATENT LAW AND PRACTICE 192 (BNA Books 2006), discovery pertaining to the affirmative defense of patent misuse necessarily overlaps with discovery pertaining to a counterclaim of sham litigation. Thus, any increase in cost and time will be de minimus.

In the second amended counterclaim, Phonak claims that the actions of counterclaim defendants "constitute activity in restraint of trade with the intent of stifling competition and blocking the introduction of innovations in the hearing aid line of commerce." Dkt. # 114, at 29. These actions allegedly have had an anticompetitive effect and intentionally caused harm to Phonak, "which has stopped or limited importation of its accused products into the United States." Id. Based on information and belief, Phonak alleges that counterclaim defendants' actions have "had comparable effects on the business activity of the other named defendants and competitors in the hearing aid line of commerce." Id. Phonak also has been allegedly "harmed by the expense and business uncertainty of defending against this objectively baseless lawsuit." Id. According to Phonak, "there is currently and likely [will be] a future adverse effect on market competition and the ability of consumers to secure new and improved products in the hearing aid marketplace and there is a direct connection between the actions of Hear-Wear, the Feeleys, Sebo Tek [sic], J&M Sound, and Cleartone, and the injury to their competitors." Id. Phonak allegedly has suffered direct and substantial harm resulting from counterclaim defendants' illicit conduct, "including but not limited to lost sales and profits, attorney fees and legal costs, pre-judgment interest, lost market share, reduction in business value, lost business reputation or goodwill, as well as other associated costs." Id. at 29-30. Again, Twombly does not require a claimant to meet a heightened fact pleading of specifics, but only to include "enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974. Phonak's factual allegations, if true, would support the existence of antitrust injury. The Court concludes, therefore, that Phonak has stated a facially plausible claim.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Dismiss Phonak, LLC's Amended Second Counterclaims under the Oklahoma Antitrust Reform Act and Counterclaim Defendants Joined in Antitrust Claim (Dkt. # 129) and Later-Added Counterclaim Defendants' Motion to Dismiss Phonak, LLC's Amended Second Counterclaims under the Oklahoma Antitrust Reform Act (Dkt. # 136) are hereby **denied**.

**DATED** this 18th day of March, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT