## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

HEAR-WEAR TECHNOLOGIES, LLC,     )
                                     )
           **Plaintiff,**          )
                                     )
v.                                   )     **Case No. 07-CV-0212-CVE-FHM**
                                     )
OTICON, INC., et al.,            )
                                     )
          **Defendants.**       )

## OPINION AND ORDER

Plaintiff Hear-Wear Technologies, LLC originally filed this action in April 2007 alleging that defendants Oticon, Inc. and others[1] directly or indirectly infringed four patents issued to Hear-Wear or its assignors. All four patents were subsequently challenged as invalid in proceedings before the United States Patent and Trademark Office (USPTO). Relevant to this opinion and order, Hear-Wear or its assignors were issued two patents for hearing aids and hearing aid components: U.S. Patent No. 5,606,621 (issued Feb. 25, 1997) (the '621 Patent); and U.S. Patent No. 7,139,404 (issued Nov. 21, 2006) (the '404 Patent). The '621 Patent is for a hearing aid that has both a behind-the-ear (BTE) and a completely-in-canal (CIC) component, which results in a smaller, more aesthetically pleasing hearing aid with significantly reduced feedback and occlusion effect. The '404 Patent is for a BTE/CIC auditory device and modular connector system therefor that simplifies both the fitting and sales process by providing a user with a more tailored fit and allowing a single fitting session. Hear-Wear sells or distributes these hearing aids and components through a related entity, SeboTek Hearing Systems, LLC.

---

[1]     All other defendants have been dismissed from this action; Oticon is the only remaining defendant.

At the USPTO, the '621 Patent was subjected to two ex parte reexaminations (EPR), which resulted in rejection of Claims 1-4 by the examiner. On appeal, the Board of Patent Appeals and Interferences (BPAI) issued an opinion reversing the examiner's rejection and confirming the patentability of Claims 1-4.[2] Dkt. # 320-5. The '404 Patent was subjected to three inter partes reexaminations (IPR) and one EPR, which resulted in the cancellation of Claims 1-30 and the confirmation of Claims 31-45 without amendment. This Court stayed this action in July 2008, pending resolution of the USPTO proceedings. In May 2015, after the USPTO proceedings concluded, this Court lifted the stay. Hear-Wear now asserts infringement by Oticon of only two patents–the '621Patent and the '404 Patent.

At issue are claim terms related to the '621 Patent and the '404 Patent. The Court held a Markman hearing on January 7, 2016 to construe disputed claim terms. See Markman v. Westview Instruments, Inc.. 52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd 517 U.S. 370 (1996). Hear-Wear has identified two terms in the '621 Patent that it asks the Court to construe: (1) "mechanically isolated"; and (2) "provides the mechanical isolation between the behind-the-ear component and the completely-in-canal component." Oticon has asked the Court to construe the two terms Hear-Wear

---

[2]     The USPTO issued an ex parte reexamination certificate confirming the patentability of Claims 1-3 and adding Claim 4. Dkt. # 319-2, at 6; see HERBERT F. SCHWARTZ PATENT LAW AND PRACTICE § 2.IV.C.2 (5th ed. 2006) ("In reexamination, existing claims may only be narrowed, although new claims, no broader than the original claims, may be added. On completion of reexamination, a Notice of Intent to Issue a Reexamination Certificate and subsequently the Reexamination Certificate itself are issued."). Therefore, Claim 4 is contained in the reexamination certificate for the '621 Patent and the Court uses "'621-C1" when referring to this claim.

identified[3] and three additional terms in the '621 Patent:(1) "operatively connected"; (2) "the bony portion of the ear canal"; and (3) "completely-in-canal component."  Oticon also asks the Court to construe four terms in the '404 Patent: (1) "completely-in-canal component"; (2) "a method for providing a plurality of earpiece auditory device components, a portion of which may be assembled to form an earpiece auditory device tailored to a user, said method comprising";  (3) "providing a plurality of behind-the-ear components from which a behind-the-ear component operable to facilitate the user's intended use for the earpiece auditory device may be selected"; and (4) "said connector of sufficient length is sufficiently rigid so as to allow said connector of sufficient length to be used to insert and remove the completely-in-canal component from the ear canal of the user."  Finally, the parties stipulate that "hearing aid receiver," as used in the '621 Patent, means "a speaker."

## I.

A patent consists of a specification, which includes a detailed description of the invention and the drawings, and one or more claims that appear at the end of the patent.  "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  Determination of patent infringement is a two-step process.  First, the court must construe the patent claims.  Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998); Strattec Sec. Corp. v. Gen. Auto. Specialty Co., 126 F.3d 1411, 1416 (Fed. Cir. 1997); Markman, 52 F.3d

---

[3]     Oticon seeks construction of the term "the completely-in-canal component being mechanically isolated from the behind-the-ear component," while Hear-Wear seeks construction of the shorter phrase "mechanically isolated."  Both proposed constructions focus on mechanical isolation as the disputed term.

at 976.  Second, the construed claims are compared to the allegedly infringing device or process.[4]
E.g., Cybor Corp., 138 F.3d at 1454.

The words and phrases used in claims must be clear, exact, and precise.  Claims must also
"particularly point[] out" and "distinctly" claim the invention.  35 U.S.C. § 112.  The claim
requirements of 35 U.S.C. § 112 must be adhered to strictly for purposes of enabling the public to
determine what subject matter is, and what subject matter is not, within the scope of the monopoly
granted by the United States government.  That subject matter that has not been made the subject
of the patent monopoly is free territory to be practiced by everyone in the general public.  The public
is entitled to rely on the public record, apply the established rules of claim construction, ascertain
the scope of the patent, and attempt to design around it.  Vitronics Corp. v. Conceptronic, Inc., 90
F.3d 1576, 1584 (Fed. Cir. 1996).  Because the public relies on the claims, it is "unjust to the public,
as well as an evasion of the law, to construe [claims] in a manner different from the plain import of
[their] terms."  White v. Dunbar, 119 U.S. 47, 52 (1886) (quoted in Phillips, 415 F.3d at 1312).

The words of a claim are to be given their "ordinary and customary meaning," which is the
"meaning that the term would have to a person of ordinary skill in the art in question at the time of
the invention . . . ."  Phillips, 415 F.3d at 1313; see also Vitronics, 90 F.3d at 1572; Innova, 381
F.3d 1116.  "In some cases, the ordinary meaning of claim language as understood by a person
of skill in the art may be readily apparent even to lay judges, and claim construction in such cases
involves little more than the application of the widely accepted meaning of commonly understood

---

[4]      Courts must ignore the defendant's allegedly infringing device or process when construing
claim terms.  Only after the claims have been properly construed without any consideration
of the alleged infringement, may the construed claims be applied to the defendant's device
or process.  SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1118 (Fed. Cir.
1985).

words.  In such circumstances, general purpose dictionaries may be helpful." Phillips, 415 F.3d at

1314.  However, in cases where the intended meaning is not apparent, courts look to "those sources

available to the public that show what a person of skill in the art would have understood disputed

claim language to mean," Innova, 381 F.3d at 1116, including the patent specifications and the

prosecution history.  See ICU Med., Inc. v. Alaris Med. Sys., Inc., 558 F.3d 1368, 1374 (Fed. Cir.

2009); Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("'We cannot look

at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning

in the context of the written description and the prosecution history.'") (alteration in original)

(quoting DeMarini Sports, Inc. v. Worth, 239 F.3d 1314, 1324 (Fed. Cir. 2001)).  The language,

specifications, and prosecution history, collectively, are referred to as "intrinsic evidence."

      The patent specifications are relevant to claim construction because the claims are part of

"'a fully integrated written instrument.'" ICU Medical, 558 F.3d at 1374 (quoting Phillips, 415 F.3d

at 1315).  "Thus not only is the written description helpful in construing claim terms, but it is also

appropriate 'to rely heavily on the written description for guidance as to the meaning of the claims.'"

Id. (quoting Phillips, 415 F.3d at 1317).  Although specifications may be helpful in construing the

terms of a claim, specifications do not necessarily limit claims' scope if the claims are written in

broad language.  Innova, 381 F.3d at 1117 ("[P]articular embodiments appearing in the written

description will not be used to limit claim language that has broader effect. . . . [E]ven where a

patent describes only a single embodiment, claims will not be 'read restrictively unless the patentee

has demonstrated a clear intention to limit the claim scope . . . .'") (quoting Liebel-Flarsheim Co.

v. Medrad, Inc., 358 F.3d 898, 906 (Fed. Cir. 2004)).

The prosecution history is relevant because it "provides evidence of how the [USPTO] and the inventor understood the patent." Phillips, 415 F.3d at 1317. Although it is "less useful [than the specifications] for claim construction purposes," it "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Id. If the patentee unequivocally disclaimed a certain meaning during the patent approval process, the claim must be narrowed to exclude that meaning. Chimie v. PPG Indus., Inc., 402 F.3d 1371, 1384 (Fed. Cir. 2005). This ensures that claims are not construed one way in order to gain approval and another way against accused infringers. Id.

Although the Federal Circuit has emphasized the importance of intrinsic evidence in claim construction, district courts may also rely on extrinsic evidence, which "'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" Phillips, 415 F.3d at 1318 (quoting Markman, 52 F.3d at 980). "While extrinsic evidence 'can shed useful light on the relevant art,' . . . it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" Id. (quoting C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 862 (Fed. Cir. 2004)).

In the end,

there is no magic formula or catechism for conducting claim construction. Nor is the court barred from considering any particular sources or required to analyze sources in any specific sequence, as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence. For example, a judge who encounters a claim term while reading a patent might consult a general purpose or specialized dictionary to begin to understand the meaning of the term, before reviewing the remainder of the patent to determine how the patentee has used the term. The sequence of steps used by the judge in consulting various sources is not important; what matters is for the court to attach the appropriate weight to be

assigned to those sources in light of the statutes and policies that inform patent law.

Id. at 1323 (internal citations omitted).

## II.

### A. '621 Patent Terms

"Mechanically Isolated"/ "The Completely-in-Canal Component Being Mechanically Isolated from the Behind-the-Ear Component

The parties ask the Court to construe the term "mechanically isolated" or "the completely-in-canal component being mechanically isolated from the behind-the-ear component," as that term is used in Claim 1 of the '621 Patent. The BPAI[5] has previously construed "mechanically isolated" to mean "that, in the normal operation of the hearing aid, there is no meaningful mechanical medium for transmitting vibrations from one component to the other," (Dkt. # 320-5, at 8) and Hear-Wear asks the Court to adopt a nearly identical construction: "there is no meaningful medium for transmitting mechanical vibrations from one component to the other during normal operation." Dkt. # 320, at 12. Oticon argues that the term should be construed to mean that "no mechanical force or vibration can be transferred or transmitted between the completely-in-canal component and the behind-the-ear component." Dkt. # 319, at 28.

_____

[5]     The Court notes that the BPAI employs a different standard in reexamination proceedings than a district court applies during claim construction. Compare Phillips, 415 F.3d at 1313 ("[W]ords of a claim are generally given their ordinary and customary meaning. . . . [T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention . . . ." (internal quotation marks and citations omitted)), with Dept. of Commerce, Manual of Patent Examining Procedure § 2111 (9th ed. 2014, rev. Nov. 2015) ("During patent reexamination, the pending claims must be given their broadest reasonable interpretation consistent with the specification."). The Court acknowledges the different standards, but still considers the BPAI decision for its persuasive value in determining the meaning of the disputed claim term.

Claim 1 of the '621 Patent states that the hearing aid is comprised of two parts: a behind-the-ear component and a completely-in-canal component, with "the completely-in-canal component being mechanically isolated from the behind-the-ear component." '621 Patent 4:1-3. The parties' proposed constructions of this term differ in one key respect: whether mechanical isolation involves no meaningful mechanical medium for transmitting vibrations or no mechanical force or vibration of any kind between the two components, that is, whether feedback between the two components is reduced or completely eliminated.

First, the language of the patent specification is consistent with Hear-Wear's proposed construction. The patent specification repeatedly references the reduction of electroacoustic feedback as a beneficial aspect of the new hearing aid components, including reference to "a high-gain hearing aid that has reduced electroacoustic feedback characteristics," and statements that "[b]ecause the BTE and CIC components are mechanically isolated from each other, electroacoustic feedback is greatly reduced," and "[i]n use, electroacoustic feedback is minimal because the only mechanical connection between the BTE component 10 and the CIC component 18 is via the patient's head." '621 Patent 1:36-38; 1:51-53; 2:27-30. Oticon's proposed construction, which would require elimination of all feedback, is inconsistent with the language of the specification.

Second, the BPAI previously construed "mechanically isolated" in the reexamination of the '621 Patent. The BPAI concluded that:

> Mechanical isolation means that, in the normal operation of the hearing aid, there is no meaningful mechanical medium for transmitting vibrations from one component to the other. . . . In other words, during use, Hear-Wear's thin flexible wire cable [22] does not provide a meaningful mechanical medium for transmitting vibrations between the BTE [10] and CIC [18] components, thereby reducing electroacoustic feedback. Therefore, mechanical isolation means that during normal operation, electroacoustic feedback is reduced because there is no meaningful mechanical medium for transmitting vibrations from one component to the other.

8

Dkt. # 320-5, at 8-9.  Hear-Wear's proposed construction comports with the BPAI's decision, while Oticon's proposed construction fails to meaningfully account for its departure from the BPAI's construction.  And Oticon's own expert during the reexamination proceedings, Dr. Stephen C. Thompson, Ph.D., acknowledged that the patent was intended to reduce, rather than eliminate electroacoustic feedback: "The '621 patent's specification teaches the purpose for mechanically isolating the BTE component from the CIC component is to minimize 'electroacoustic feedback.'" Dkt. # 339-1, at 10.

Oticon's argument that electroacoustic feedback between the components must be eliminated is unpersuasive in light of the evidence to the contrary.  And, to the extent Oticon argues that the use of the word "meaningful" in Hear-Wear's proposed construction as the measure of permissible levels of mechanical vibrations renders the term indefinite, Oticon's bare assertions are insufficient to prove the term's indefiniteness by a clear and convincing standard.  Dkt. ## 319, at 32-33; 337, at  16; see also Microsoft Corp. v. i4i Ltd. P'ship, 131 S. Ct. 2238, 2242 (2011) (explaining clear and convincing standard for indefiniteness challenges).

After considering the foregoing evidence, the Court concludes that Hear-Wear's proposed construction should be adopted.  "Mechanically isolated" shall be construed to mean "there is no meaningful medium for transmitting mechanical vibrations from one component to the other during normal operation."

"Provides the Mechanical Isolation Between the Behind-the-Ear Component and the Completely-in-Canal Component"

The parties ask the Court to construe the term "provides the mechanical isolation between the behind-the-ear component and the completely-in-canal component" as that term is used in Claim 4 of the '621 Patent.  Oticon asserts that the term should be construed so as to mean "the thin flexible wire cable 'cannot transfer or transmit mechanical force or vibration between the behind-the-ear component and the completely-in-canal component.'"  Dkt. # 319, at 28.  Hear-Wear asserts that the term should be construed so as to mean "is not a meaningful medium for transmitting mechanical vibrations between components during normal operation."  Dkt. # 320, at 15.

Claim 4 of the '621 Patent provides that the connector of the hearing aid components described in Claim 2, where a thin flexible insulated wire cable is the only connection between the behind-the-ear and completely-in-canal components, "provides the mechanical isolation between the behind-the-ear component and the completely-in-canal component."  '621 Patent-C1 2:10-12. The parties' proposed constructions of this term differ in the same key respect as the above-considered term.  For the same reasons as discussed above, the Court adopts Hear-Wear's proposed construction and construes this term as "is not a meaningful medium for transmitting mechanical vibrations between components during normal operation."

<u>"Operatively Connected"</u>

Oticon previously requested construction of the term "operatively connected," as used in Claim 1 of the '621 Patent, but Oticon has withdrawn its request for construction.  The parties agree that the plain and ordinary meaning of this term applies.

<u>"The Bony Portion of the Ear Canal"</u>

10

Oticon argues that "the bony portion of the ear canal," as used in Claim 1 of the '621 Patent, should be construed to refer to "the innermost portion of the ear canal next to the eardrum, located past the second bend of the ear canal, and not including the cartilaginous region." Dkt. # 319, at 35. Hear-Wear argues that this term requires no construction because the plain and ordinary meaning to one skilled in the art sufficiently defines the term, asserting that this term has a well-accepted meaning in the industry. Dkt. # 320, at 22. In the alternative, Hear-Wear seeks to construe the term as "that portion of the ear canal that has bone under the skin." Id.

Claim 1 of the '621 Patent states that the completely-in-canal component shall be shaped to fit into the ear canal of the patient so as to touch "the bony portion of the ear canal." '621 Patent 4:4-5. Hear-Wear relies on the expert statements of Dr. Scott Cordray, D.O. (Dkt. # 320-10) and Dr. Staab (Dkt. # 320-3), made in relation to these proceedings, to explain how the term is understood by those skilled in the art. Dr. Cordray opined that the term is appropriately defined as "that portion of the canal that has bone under the skin" and explained that the second bend of the ear canal is a part of the bony portion of the ear canal because the lip of the bony portion extends into the second bend. Dkt. # 320-10, at 8. Dr. Staab explained that the bony portion of the ear canal "has a well understood meaning to those of skill in the art and the '621 Patent use of this term is consistent with that meaning," and opined that Oticon's proposed construction was inconsistent with the term as understood by those skilled in the art because the boundary of the second bend of the ear canal is a rough approximation and not an exact measure. Dkt. # 320-3, at 31-32. But Hear-Wear fails to explain how its proposed construction is in accordance with the physical structure of the ear, when exhibits depicting the ear structure demonstrate that bone is present under the skin in a broader area than is referenced in relation to this term. See Dkt. # 337-2, at 7. Hear-Wear's proposed

construction would result in an overbroad definition because it could be understood to include any

area of the ear that had bone under the skin rather than that area located near the second bend of the

ear canal.

To the extent Oticon's proposed construction defines the bony portion of the ear canal as

beginning past the second bend of the ear canal, it is inconsistent with the understanding of the term

by those skilled in the art.   Oticon attempts to narrow the definition by asserting that the bony

portion begins past the second bend of the ear canal, but does not provide sufficient evidence to

show that its proposed construction is consistent with the understanding of the term by those skilled

in the art.  Oticon argues that the prosecution history supports its proposed construction. Dkt. # 319,

at 35.  Oticon primarily relies upon the declaration of Adnan Shennib, B.S. Electrical and Computer

Science Engineering, M.S. Biomedical Engineering,  before the USPTO,[6] in which Shennib

explained that "[t]he two regions are separated roughly at the 'second bend' of the ear canal," as

well as Dr. Staab's statement before the USPTO, in which he explained that "the bony portion of

_____

[6]     Oticon also relies on an interview summary from the reexamination proceedings, prepared
by the examiner after the interview, in which the examiner recounts Shennib explaining that
the bony portion is located past the second bend of the ear canal. Dkt. # 319-12, at 2.  Hear-
Wear filed a statement in response to the interview summary generally challenging the
examiner's recitation of the interview. Dkt. # 320-9; see also 37 C.F.R. § 1.133(b).  Roughly
two weeks later, Shennib submitted a sworn declaration in which he explained his
understanding that the bony portion of the ear canal begins roughly at the second bend.  Dkt.
# 320-8.
        Although this interview summary constitutes intrinsic evidence that the Court may
consider, the Court will not rely on this summary in construing this claim term.  The
interview summary is of little value because it constitutes hearsay, was prepared by an
examiner after the interview, and is inconsistent with Shennib's subsequent sworn
declaration     made roughly two weeks after the interview.  See Dkt. # 320-8 (Shennib Declaration
dated   August 24, 2009); Dkt. # 319-12 (Interview Summary dated August 11, 2009).  The Court
will thus not rely on this interview summary as evidence that Shennib defined the bony
portion of the ear canal as beginning past the second bend.

the ear canal beings approximately with the second bend in the ear canal." Id.; Dkt. # 337, at 25. But Oticon fails to explain how these statements support its more specific construction that the bony portion of the ear canal begins past the second bend. Oticon fails to demonstrate why general statements by Hear-Wear's experts providing a rough description of the ear canal should be read to assert such a precise definition as Oticon proposes.

Neither party presents a construction that is in accord with industry understanding and the physical structure of the ear. Consistent with the evidence both parties presented, the Court construes "the bony portion of the ear canal" as "the innermost portion of the ear canal starting roughly at the second bend of the ear canal."

"Completely-in-Canal Component"

Oticon argues that the term "completely-in-canal component," as used in Claim 1 of the '621 patent and should be construed to refer to "a component shaped to fit into the ear canal of the user in such a manner as to touch the bony portion of the user's ear canal." Dkt. # 319, at 33. Oticon asserts that its proposed construction is consistent with both the industry understanding of this technical term of art and the prosecution history. Id. Hear-Wear responds that the term does not need construction because it has a plain and ordinary meaning understood by those skilled in the art. Dkt. # 320, at 18. In the alternative, Hear-Wear argues that the term should be construed to refer to "a component that fits completely in the user's ear canal."[7] Id.

_____

[7]     In support of its proposed construction, Hear-Wear presents Oticon's own patents, which Hear-Wear asserts employ the same meaning of completely-in-canal component as Hear-Wear now proposes. The Court declines to consider Oticon's patents in construing this claim term. Although the patents constitute extrinsic evidence that the Court may consider, Oticon's patents are of little relevance in this action, where ample other evidence provides guidance for construing the claim term and Oticon's patents were issued nearly ten years after the latest of the '621 and '404 Patents.

Claim 1 of the '621 Patent provides for a hearing aid with "a completely-in-canal component," consisting of certain features, including "being mechanically isolated from the behind-the-ear component," "being shaped to fit into the ear canal of the patient in such a manner as to touch the bony portion of the ear canal," and "containing a hearing aid receiver and being operatively connected to the amplifier means." '621 Patent 4:1-7.

Oticon's and Hear-Wear's proposed constructions differ in that Oticon asserts the completely-in-canal component must fit into the ear canal in such a manner as to touch the bony portion of the user's ear canal, while Hear-Wear asserts that the component need only fit completely in the user's ear canal. Hear-Wear presents the expert statement of Dr. Staab, made in relation to these proceedings, to explain how the term would be understood in its plain and ordinary meaning by one skilled in the art. Dkt. # 320-3, at 27. Dr. Staab opined that a person skilled in the art would interpret the term to have its plain and ordinary meaning, which he defined as referring to "a component that fits 'completely' in the ear canal of the user, i.e., without having any portion in the outer ear." Id. He further opined that Oticon's proposed construction would be redundant because Claim 1 explains that one of the features of the completely-in-canal component is that it be shaped to touch the bony portion of the ear canal. Id. Dr. Staab's statement regarding the redundancy of Oticon's proposed construction is particularly persuasive. Reading the claim language as whole, it is evident that Oticon's proposed instruction would render one of the features of the component–"being shaped to fit into the ear canal of the patient in such a manner as to touch the bony portion of the ear canal"–superfluous. The Court declines to construe a claim term in a manner that renders additional language in the claim redundant. See Stumbo v. Eastman Outdoors, Inc., 508 F.3d 1358, 1362 (Fed. Cir. 2007) (explaining that construing a claim term so as to render other claim

14

language superfluous is "a methodology of claim construction this court has denounced"). The Court thus adopts Hear-Wear's proposed construction, and construes "completely-in-canal component" to mean "a component that fits completely in the user's ear canal."

<u>"Hearing Aid Receiver"</u>

The parties stipulate that "hearing aid receiver," as used in Claim 1 of the '621 Patent means "a speaker."

**B. '404 Patent Terms**

<u>"Completely-in-Canal Component"</u>

Oticon argues that the term "completely-in-canal component," as used in Claim 31 of the '404 Patent, should be construed to refer to "a component shaped to fit into the ear canal of the user in such a manner as to touch the bony portion of the user's ear canal." Dkt. # 319, at 18. Hear-Wear responds that "completely-in-canal component" requires no construction or, in the alternative, the term should be construed as "a component that fits completely in the user's ear canal," arguing that the intrinsic evidence supports its construction. Dkt. # 320, at 32.

Claim 31 of the '404 patent provides for a "completely-in-canal component" that is physically coupled with a behind-the-ear component. '404 Patent 20:64. Claim 31 uses only the phrase "completely-in-canal component" and does not reference touching the bony portion of the ear canal.

Oticon asserts that, because the '404 Patent incorporates the '621 Patent by reference, the completely-in-canal component feature included in the '621 Patent–that the component touch the bony portion of the ear canal–should be read into the '404 Patent. To the extent Oticon argues that

the incorporation of the '621 Patent supports its proposed construction, for the reasons discussed above regarding this term in the '621 Patent, the Court finds this argument unpersuasive. Oticon also asserts that, because the preferred embodiments in the '404 Patent include a completely-in-canal component that is shaped to touch the bony portion of the ear canal, the claim language should be narrowed to include such a limitation. Dkt. # 319, at 16-17. But a court should not read a preferred embodiment into the language of claims so as to create a limitation. See C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 865 (Fed. Cir. 2004) ("[A] patentee's choice of embodiments can shed light on the intended scope of a claim, but a patent claim term is not limited merely because the embodiments in the specification all contain a particular feature."); Comark Commc'ns, Inc. v. Harris Corp., 156 F.3d 1182, 1187 (Fed. Cir. 1998) ("'Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" (quoting Constant v. Advanced Micro-Devices, Inc., 858 F.2d 1560, 1571 (Fed. Cir. 1988)).

After considering this evidence, the Court adopts Hear-Wear's proposed construction and construes "completely-in-canal component" as "a component that fits completely in the user's ear canal."

"A Method for Providing a Plurality of Earpiece Auditory Device Components, a Portion of which May Be Assembled to Form an Earpiece Auditory Device Tailored to a User, Said Method Comprising"

Oticon argues that the preamble to Claim 31 in the '404 patent is limiting, and that the term "user" refers to "a specific, identifiable user." Dkt. # 319, at 22. Hear-Wear contends that no construction of this term is necessary and, although the term "user" is found both in the preamble

and the body of the claims, the preamble places no additional limitation on the term so as to be considered limiting.  Dkt. # 320, at 25.

Claim 31 of the '404 Patent begins by stating  "a method for providing a plurality of earpiece auditory device components, a portion of which may be assembled to form an earpiece auditory device tailored to a user, said method comprising" various different components. '404 Patent 20:48-51.  Oticon asserts that this constitutes a preamble to the claim and that the Court should construe it as a limiting preamble because it contemplates a specific, identifiable user.[8]

A preamble to a claim limits the claim "if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim." Am. Med. Sys., Inc. v. Biolitec Inc., 618 F.3d 1354, 1358 (Fed. Cir. 2010) (internal quotation marks omitted). There is no litmus test for determining when a preamble limits claim scope, but "[w]hen the preamble is essential to understand limitations or terms in the claim body, the preamble limits claim scope." Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 808 (Fed. Cir. 2002).

Oticon relies on the language of the claims to support its assertion that the preamble is limiting.  In particular, Oticon identifies the phrase "the particular user" in Claim 33[9] and the phrase "the user's ear structure" in Claim 41[10] as demonstrative of the limitation, arguing that these phrases

---

[8]     The Court notes that the patent contains the word "users" in one line of Claim 31. '404 Patent 20:53 ("behind the ear of the users to a completely-in-canal component").  The Court believes this to be a typographical error given that it is the only time the plural of "user" appears in the claim and that the surrounding language, including the singular word "ear" immediately preceding "users," demonstrates that the word was intended to refer to the singular "user."

[9]     Claim 33 involves the method of Claim 32, which incorporates the method of Claim 31. '404 Patent 21:12-21.

[10]    Claim 41 concerns the method of Claim 40, which, through Claim 32, incorporates the method of Claim 31.  '404 Patent 22:19-21.

show that the term "user" in the preamble contemplates a specific, identifiable user. Dkt. # 319, at 23. Oticon further relies on the patent specification, which utilizes the word "individual" and explains that the device allows a hearing aid to be tailored to "the particular user's ear structure." Id. at 23-24; '404 Patent 17:15; 17:23-24. Finally, Oticon asserts that Hear-Wear acknowledged that the term "user" referred to a specific, identifiable user in its action before the USPTO, quoting a filing in which Hear-Wear stated, "This method provides for an earpiece design in order to tailor an auditory device for a specific user." Dkt. # 319 at 24.

But Oticon fails to acknowledge that its argument that the preamble is limiting is contrary to the claimed invention and would essentially negate the purpose of the patent. See In re Stencel, 828 F.2d 751, 754 (Fed. Cir. 1987) ("Whether a preamble of intended purpose constitutes a limitation to the claim is, as has long been established, a matter to be determined on the facts of each case in view of the claimed invention as a whole."). Oticon's argument would render the primary benefit of the '404 Patent–that users would be able to select from a variety of components to avoid the necessity of fitting the hearing aid to the specific user's ear structure over the course of several fittings–a nullity. And, even if the preamble were limiting, it would be inappropriate to read such a limitation into otherwise broad and general claim language. See Johnson Worldwide Assocs. v. Zebco Corp., 175 F.3d 985, 992 (Fed. Cir. 1999) (explaining that even if the preamble were limiting, it would be improper for the court to import such a limitation into claim language to narrow an otherwise broad and general term).

Oticon also parses the language of the claim in its argument, omitting reference to the language "a portion of which may be assembled," which demonstrates that the patent contemplates distribution to a user post-manufacture. See '404 Patent 20:49-50. The claim language does not

mandate, as Oticon suggests, that a manufacturer know the specific user at the time of manufacturing the component parts. Instead, the claim language contemplates that a user will only be known after the component parts are manufactured, as is evidenced by the "which may be selected" claim language. Further, Oticon fails to account for the specification language which explains that "rather than waiting until a particular customer has been fitted . . . the manufacturer(s) . . . may instead make available one or more massed produced components. . . . The user, or other individual, may then select from the above described components . . . ." '404 Patent 16:1-16. This specification language clearly indicates that the patent contemplates the manufacture of component parts before distribution to a specific, identifiable user, particularly when considering the use of the word "then," which provides the temporal structure: manufacture occurs before a user or other individual chooses a certain combination of components to best fit his or her needs. Reading the claim and patent specification language as a whole, the Court thus concludes that the preamble to Claim 31 is not limiting because the term "user" does not require a specific, identifiable user at the time of manufacture of the various components.

"Providing a Plurality of Behind-the-Ear Components from which a Behind-the-Ear Component Operable to Facilitate the User's Intended Use for the Earpiece Auditory Device May Be Selected"

Oticon argues that this term should be construed to refer to "providing two or more behind-the-ear components with different sizes and functional capabilities, one of the behind-the-ear components having a size and functional capability that are tailored to the specific, identifiable user's intended use." Dkt. # 319, at 25. Hear-Wear responds that this term may be understood in its plain and ordinary manner, rending construction unnecessary. Dkt. # 320, at 27. In the alternative, Hear-Wear provides the proposed construction of "providing two or more behind-the-ear components from which one operable to facilitate the user's intended use may be selected." Id.

Hear-Wear argues that this construction comports with the meaning accepted by those skilled in the art and principles of claim construction and is supported by intrinsic evidence.  Id. at 28.

Claim 31 of the '404 Patent defines a method for providing a plurality of earpiece auditory device components, comprising, in part "providing a plurality of behind-the-ear components from which a behind-the-ear component operable to facilitate the user's intended use for the earpiece auditory device may be selected . . . ." '404 Patent 20:52-55.

Oticon asserts that the patent specification identifies two key aspects of a behind-the-ear component necessary to "facilitate the user's intended use": size and functionality.  Dkt. # 319, at 25. Specifically, Oticon identifies the portion of the specification that explains that the component is intended to "provide the fit and functional capabilities desired by the user." Id. at 26; '404 Patent 16:14-16.  Oticon further asserts that the prosecution history supports its construction, noting that Hear-Wear acknowledged that the behind-the-ear components must include multiple sizes.  Dkt. # 319, at 26.  Oticon argues that this intrinsic evidence comports with its construction, which emphasizes the fit and functionality of the behind-the-ear component.  Id. at 26-27.  Hear-Wear argues that Oticon's proposed construction attempts to limit the scope of the claim based solely on its motivation to avoid infringement charges rather than on fidelity to the evidence and principles of claim construction.  Dkt. # 320, at 28.

Most compellingly, Hear-Wear relies on the principle of claim construction that courts should not read a limitation into a claim when such a limitation is explicitly set forth in another claim.  Id.; see also Envt'l Designs Inc. v. Union Oil Co., 713 F.2d 693, 699 (Fed. Cir. 1983) ( "It is improper for courts to read into an independent claim a limitation explicitly set forth in another claim.").  Hear-Wear notes that Oticon attempts to impose a size and functionality limitation through

its proposed construction, but argues that Oticon fails to acknowledge that Claim 34 imposes an

independent size limitation, while Claim 37 imposes an independent functionality limitation. Dkt.

# 320, at 28. Claim 34 provides: "The method of Claim 32 wherein said plurality of said behind-the-

ear components includes at least two behind-the-ear components of different dimensions." '404

Patent 21:26-28. Claim 37 provides: "The method of claim 35 wherein said at least one behind-the-

ear component having sound processing circuitry includes at least two behind-the-ear components

having different sound processing circuitry." Id. at 22:1-4. Claims 34 and 37 speak directly to the

fit and functionality elements that Oticon seeks to include in the construction of the term found in

Claim 31. Because the Court agrees that Claims 34 and 37 impose independent fit and functionality

limitations, it is inappropriate for the Court to read a similar limitation into Claim 31.

Hear-Wear's proposed construction is further bolstered by the patent language. Although

Oticon asserts that the term requires components of different sizes and functional capabilities, this

does not comport with the patent specification. The specification explains that:

> This plurality of behind-the-ear units may include units of different types, shapes,
> sizes (e.g., so that a user may select a behind-the-ear unit that is of a particular size
> so that the unit is made invisible by the user's ear when placed behind the user's ear),
> functional capabilities (e.g., two or more of the behind-the-ear units may have
> different sound processing circuitry), etc. However, two or more of the behind-the-
> ear units may be of the same type, shape, size, functional capability, etc.

'404 Patent 16:20-29. The use of the permissive "may" in the specification and the explicit

acknowledgment that two or more behind-the-ear units may be of the same size and functional

capabilities underscores that Hear-Wear's proposed construction more appropriately defines the

term.

Finally, Oticon's assertion that the prosecution history supports its proposed construction

seeks to isolate a single statement during the reexamination of the '404 Patent and place undue

significance on this statement.  Oticon identifies the statement in which Hear-Wear acknowledged the difference between its patent and a "one size fits all" approach utilized by other prior art.  Dkt. # 337, at 18 ("Rapps specifically disparages using a plurality of BTE's [sic] because a one size fits all approach yields substantial manufacturing and distribution cost advantages.").  Hear-Wear asserts that this statement is nothing more than "an observation that an alleged prior art reference touts the benefits of providing a single type of behind-the-ear component," and "does not, however, require that the claimed 'plurality of behind-the-ear components' each have different sizes and functional capabilities[.]"  Dkt. # 320, at 31.  The Court agrees that this is a mere observation and does not mandate that the plurality of behind-the-ear components, as described in the claim, each be of different size and functional capability.

Based on the consideration of this evidence and the principles of claim construction, the Court concludes that Hear-Wear's construction should be adopted. The Court thus construes "providing a plurality of behind-the-ear components from which a behind-the-ear component operable to facilitate the user's intended use for the earpiece auditory device may be selected" to mean "providing two or more behind-the-ear components from which one operable to facilitate the user's intended use may be selected."

<u>"Said Connector of Sufficient Length is Sufficiently Rigid so as to Allow Said Connector of Sufficient Length to Be Used to Insert and Remove the Completely-in-Canal Component from the Ear Canal of the User"</u>

Oticon argues that the Court should find this term indefinite under 35 U.S.C. § 112, ¶ 2, rendering it invalid.  Dkt. # 319, at 14.  Oticon asserts that, because the term calls for a connecter that is "sufficiently rigid," it is a term of degree in that it requires a specific degree of rigidity.  <u>Id.</u> Specifically, Oticon asserts that the term is indefinite because: "(1) the specification does not

disclose any measure or standard for assessing whether a connector is 'sufficiently rigid' to be used to *insert* the 'completely-in-canal' component into the ear canal of the user; (2) the notion of rigidity is nonsensical when describing the necessary characteristics of a connecter in order for it to be used to *remove* the CIC component from the ear canal of the user." Id. at 15.  Hear-Wear asserts that Oticon has failed to satisfy its burden of proving that the claim term is indefinite and that the language of the patent, as well as similar language in Oticon's own patent,[11] provide sufficient certitude regarding the necessary rigidity of the connector.  Dkt. # 320, at 34-35, 39.

Claim 31 of the '404 Patent states that, with respect to the connecter between the completely-in-canal component and behind-the-ear component, "said connector of sufficient length is sufficiently rigid so as to allow said connector of sufficient length to be used to insert and remove the completely-in-canal component from the ear canal of the user." '404 Patent 21:8-11.

Although a finding that a term is indefinite bears upon the validity of a claim, it is an issue of law that a court appropriately reviews during the claim construction period.  Praxair, Inc. v. ATMI, Inc., 543 F.3d 1306, 1319 (Fed. Cir. 2008) ("Indefiniteness is a matter of claim construction, and the same principles that generally govern claim construction are applicable to determining whether allegedly indefinite claim language is subject to construction.").  Under § 112, ¶ 2, "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2124 (2014).  A defendant challenging a claim term as indefinite bears the burden of proving, by clear and

---

[11]     For the same reasons discussed in reference to construction of the term "completely-in-canal" as used in the '621 Patent, the Court declines to consider Oticon's own patents in considering this term.

convincing evidence, that the term is indefinite.  See 35 U.S.C. § 282(a) ("A patent shall be presumed valid. . . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."); Microsoft Corp., 131 S. Ct. at 2242 (explaining that a party challenging the validity of a claim must prove invalidity by clear and convincing standard).

Oticon argues that the term is indefinite because the patent contains no standard for assessing sufficient rigidity of a connector.  But this argument overlooks the guideposts the patent provides. The claims themselves provide guidance regarding rigidity of the connector. This includes the claim language requiring that the connector be "sufficiently rigid" for the insertion and removal of the completely-in-canal component and noting that the connector "is shaped to place a portion of said connector within the ear canal of the user when said completely-in-canal component is placed in the ear canal of the user . . . ." '404 Patent 21:1-4; 21:10-11.  The claim language provides specific guidance regarding the required rigidity, explaining the necessary capabilities for a connector to be considered sufficiently rigid.  And the patent specification describes materials that may be used to construct a "sufficiently rigid" connector, including plastic tubing material.  Id. at 12:22-35; see DDR Holdings, LLC v. Hotels.com, L.P., 773 F.3d 1245, 1260 (Fed. Cir. 2014) ("For . . . terms of degree, specific and unequivocal examples may be sufficient to provide a skilled artisan with clear notice of what is claimed.").  The specification also explains how the unit may be removed from the user's ear, which provides additional certitude as to the sufficient rigidity: "the completely-in-canal unit and behind-the-ear unit may be removed from the user's ear by pulling on the connector without any undesirable separation of the components." '404 Patent 15:62-65.

Oticon also asserts that a finding that the preamble in this claim is not limiting would further demonstrate that this claim term is indefinitie, arguing that, if the claim does not contemplate a

24

specific, identifiable user, that there is no standard for assessing whether a connector is of sufficient rigidity and length. But the Court finds this argument unpersuasive. The patent provides guidance regarding the sufficient length and rigidity, even if it does not contemplate a specific identifiable user. A connector is of sufficient rigidity and length if it may be used to insert or remove the completely-in-canal component regardless of the combination of components that a user ultimately selects. Thus a finding that the preamble is not limiting has no bearing on a determination regarding indefiniteness.

Based on the intrinsic evidence, the Court concludes that the patent "inform[s], with reasonable certainty, those skilled in the art" of the requisite rigidity of the connector. See Nautilus, 134 S. Ct. 2124. The term is thus not indefinite under § 112, ¶ 2.

### III.

**IT IS THEREFORE ORDERED** that the disputed terms are construed as follows:

'621 Patent

- **"Mechanically isolated"** is construed as "there is no meaningful medium for transmitting mechanical vibrations from one component to the other during normal operation."

- **"Provides the mechanical isolation between the behind-the-ear component and the completely-in-canal component"** is construed as "is not a meaningful medium for transmitting mechanical vibrations between components during normal operation."

- **"Operatively connected,"** by agreement, has its plain and ordinary meaning.

- **"The bony portion of the ear canal"** is construed as "the innermost portion of the ear canal starting roughly at the second bend of the ear canal."

- **"Completely-in-canal component"** is construed as "a component that fits completely in the user's ear canal."

- **"Hearing aid receiver"** is construed as "a speaker."

'404 Patent

- **"Completely-in-canal component"** is construed as "a component that fits completely in the user's ear canal."

- **"A method for providing a plurality of earpiece auditory device components, a portion of which may be assembled to form an earpiece auditory device tailored to a user, said method comprising"** is not a limiting preamble.

- **"Providing a plurality of behind-the-ear components from which a behind-the-ear component operable to facilitate the user's intended used for the earpiece auditory device may be selected"** is construed as "providing two or more behind-the-ear components from which one operable to facilitate the user's intended use may be selected."

- **"Said connector of sufficient length is sufficiently rigid so as to allow said connector of sufficient length to be used to insert and remove the completely-in-canal component from the ear canal of the user"** is not indefinite under § 112, ¶ 2.

    **DATED** this 19th day of January, 2016.

    _Claire V. Eagle_
    CLAIRE V. EAGAN
    UNITED STATES DISTRICT JUDGE